Tukley, J.
delivered the opinion of the court.
Two objections are taken by the defendants to the relief asked by complainants in this case.
*249 1st. It is said there is such a misjoinder of parties as vitiates the bill upon demurrer. The bill charges that Andrew Henderson, the testator of complainant Henderson, died about the 21st day of January, 1831, having previously made and published his last will and testament, by which he devised his real estate to be sold at the discretion of his executor, and the money arising therefrom to be paid over to his heirs as specified in said will. At the time of his death he was the owner of the land in dispute, and had for four years previous received the' rents' therefor from one John Jackson, his tenant; that com-1 plainant did'agree with said Jackson who was in possession that he should continue to hold as tenant for the current year, paying rent therefor, and that he, as executor, received the same for about half the land, and would have received it for the' whole, but that shortly after the death of said Henderson, Nicholas Peck and Jacob Peck, two of the defendants, forcibly and fraudulently took possession of the' houses and about one-half of the cleared land, which they still hold, but that Jackson" kept and still keeps possession of the other; that Henderson, the executor, being thus in possession, did, in pursuance of the trust imposed upon him by the will, about the 12th day of Am gust, 1831, expose the land for sale to the highest bidder, and sold to his co-plaintiff, McDermott, and that the will has been destroyedby fire and cannot be produced. It is now contended that McDermott has no interest by his purchase, and that he is therefore improperly joined as a party complainant. To sustain this position we are referred to Story^s commentaries on 'Equity Pleading, 391, sec. 508, in which is to be found the following: “The want of interest of the plaintiff in the subject matter of the suit is fatal on demurrer;” and in sec. 509 the following: “The want of interest is not only a good cause of demurrer in the case of a sole plaintiff, but if the suit is joint, a want of interest in either of the plaintiffs is equally fatal.” But that this principle is in all probability confined to the case where a joint relief is asked, is to be inferred from the example put in illustration of it, and the remark of the commentator; he says: “for example, if an inventor of medicine should sue jointly with the party, who as his agent pre *250 f>ares the medicine but has no interest in the invention, and should pray for an injunction and account for a violation of his rights, a demurrer would hold; for upon such hill the plaintiffs praying a joint relief, would not he entitled to it.” .Again, in sec. 510, the same author says, “a mere scintilla juris in one of the plaintiffs, as for example, a naked, title in a trustee to serve a power of appointment, will be sufficient to justify making him a plaintiff for the purposes of the trust with the persons in interest;” and in the case of Rhodes vs. Waburton, 6 Sim. 617, the legatees of a testator were joined as plaintiffs with the executor in suing for a debt due his estate; the bill was held not to be demurrable, and the vice chancellor said upon the occasion, “Legatees cannot file a bill against a debtor to the testator’s estate unless there is collusion between the executor and the debtor. But if the executor choose to make the legatees co-plaintiffs with him, Ido not think that superfluity renders the record not sustainable. Persons are brought here who are not necessary parties to the suit; but it is not so injurious as to make the bill not sustainable.” But it is urged that the bill should have been dismissed upon the demurrer of the defendant. This argument is based upon the assumption that the sale to McDermott is champertous. It is to be observed, that whatever may have been said upon this question heretofore, when this case was presented in a different aspect, it would have to be, as it is now, made upon the allegations of the bill, which upon the demurrer must betaken to be true. If so, it would be difficult, if not impossible, upon the face of this bill to pronounce the sale champertous. The act of 1821, ch. 66, (the champerty act,) avoids all sales of land when the vendor has not by himself, or by his agent, or tenant, or his ancestor, been in actual possession of the same, or the reversion or remainder, or taken the rents and- profits for one whole year next before the sale. Now the bill shows that the testator was in possession by his tenant and had received the rents from him up to his death; that the executor continued the tenant in possession and received from him rent for one-half the premises, and would for the whole but for the unwarranted intrusion of the defendants; it may be well doubted under these circumstances *251 whether the sale was champertous. But we do not think it necessary to determine the question; it is sufficient to state it ■ as it exists, to show that McDermott had at least such an apparent interest as to warrant his being made a party to the bill.
To hold that a want of interest in one of many co-plaintiffs ascertained after minute and particular legal investigation would vitiate a bill and prevent relief being granted to those entitled to it, would be destructive of chancery proceedings, and productive of great and irremedial mischief.
We therefore hold that there is no fatal misjoinder, if mis-joinder at all, in this case.
2d. It is contended that a court of chancery has no jurisdiction in the case, because it is said the executor is a mere naked trustee without'interest, and as such must remove the obstacles' to an execution of his trust arising out of the illegal acts of the defendants by an action of ejectment against them in the name of the heirs at law of his testator. We do not think so. The Pecks are trespassers without title or pretence of title; there is nothing necessary to be settled by trial at law; this illegal possession is a let and hinderance in the way of the execution of the trust, which we incline to think a court of chancery, from its jurisdiction in all cases of trust to protect the same and secure correct execution thereof, may remove; but the bill charges that the will has been destroyed by accident. The trust and the authority to execute it is derived under it, and the loss would necessarily embarrass the executor in the performance of his duty, and would of itself constitute a good ground for coming into this court. We, therefore, think there is no valid objection to the relief granted by the chancellor, and affirm the decree.